UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DEBORAH PATALONIS,

                     Plaintiff,

  -against-                              **MEMORANDUM AND ORDER**
                                             19-CV-1306 (RRM) (SIL)

OUTREACH DEVELOPMENT CORPORATION,

                     Defendant.
----------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge:

      Plaintiff Deborah Patalonis brings this action against her former employer, Outreach Development Corporation ("Outreach"), alleging Title VII, § 1983, and three state-law claims arising from her termination in mid-July 2018. Outreach now moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss all five claims, arguing, among other things, that the Title VII claim is time-barred because Patalonis did not commence this action within 90 days of her receipt of the right-to-sue letter. Since both parties have introduced matters outside the pleadings with respect to this issue, Outreach's motion is converted into a motion for summary judgment pursuant to Rule 12(d). Since the Court requires supplemental briefing with respect to Outreach's argument that the complaint fails to state a § 1983 claim, the Court deems Outreach's motion withdrawn, directs that Outreach file a new motion in accordance with this Memorandum and Order, and sets a briefing schedule.

## BACKGROUND

      Except as otherwise noted, the following facts are drawn from Patalonis's complaint (Doc. No. 1), the allegations of which are assumed to be true for purposes of this motion to dismiss. Patalonis is a registered nurse who, prior to her termination, had been employed by

1

Outreach for 26 years. (Compl. ¶ 1.) As part of her duties, she conducted intake assessments of patients entering Outreach's inpatient drug rehabilitation center in Brentwood, New York. (*Id.* ¶¶ 6, 8.)

In early July 2018, while working in this capacity, she conducted an assessment of a fifteen-year-old girl. (*Id.* ¶ 9.)[1] During their interaction, the girl told Patalonis that she was pregnant and scheduled to have an abortion that day. (*Id.* ¶ 10.) The girl further stated that she did not want to proceed with the abortion, but that she had been told that her boyfriend would go to jail if she kept the baby. (*Id.*) Believing that the girl was "seeking counsel" from her and being a Christian, "advised her that she should not proceed until she was certain and suggested that she pray about her decision to try to find clarity." (*Id.* ¶¶ 10–11, 26.)

About a week later, on or about July 11, 2018, Patalonis was questioned about her conversation with the girl by David Vizzini, the head of the Brentwood center. (*Id.* ¶ 12.) In the presence of a Dr. Chan, Vizzini asked Patalonis if she had told the new patient to pray. (*Id.* ¶¶ 12–13.) Patalonis admitted that she had. (*Id.* ¶ 13.) Vizzini then asked if Patalonis had told the girl that God would not forgive her if she had an abortion. (*Id.*) Patalonis denied this but, upon further questioning from Vizzini, admitted that had she advised the girl to pray when she arrived at the abortion clinic. (*Id.*)[2]

Approximately ten minutes after he finished this questioning, Vizzini summoned Patalonis for a second time. (*Id.* ¶ 15.) This time, Vizzini was in the company of Angie Espinal,

---

[1] Paragraph 9 of the complaint alleges that this interaction took place "[i]n or around July 2011." It is clear from other allegations in the pleading that this is a typographical error and that the interview occurred in or about July 2018. (*See* Compl. ¶ 12 (Patalonis terminated on July 11, 2018, "approximately a week after this interaction").)

[2] Paragraph 13 of the complaint alleges that Patalonis admitted that "she advised the plaintiff to pray when she arrived at the abortion clinic." The Court assumes that Patalonis intended to allege that she advised the girl, not "plaintiff."

Outreach's Human Resources officer. (*Id.*) Espinal accused Patalonis of violating Outreach's code of conduct, summarily terminated her, and ordered her to leave the premises immediately, without even returning to her office to retrieve her belongings. (*Id.* ¶ 16.)

According to Patalonis, not only does Outreach's code of conduct not contain any language prohibiting her actions, but her actions were "entirely consistent with her job duties and defendant's purported mission." (*Id.* ¶ 17.) Believing that she had been terminated for her religious beliefs, Patalonis filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* ¶¶ 18–19.) Patalonis alleges that the EEOC issued a right-to-sue letter, (*id.* ¶ 19), and has attached a copy of that letter – dated November 15, 2018 – as an exhibit to the complaint. However, the complaint does not allege when Patalonis received the right-to-sue letter.

### This Action

On March 6, 2019, Patalonis commenced this action against Outreach by filing a complaint containing five causes of action. The first cause of action is a claim pursuant to 42 U.S.C. § 1983, alleging that Outreach violated Patalonis's Fourteenth Amendment right to due process. In support of this claim, Patalonis alleges only 1) that she is an employee of Outreach, that Outreach is "a government contractor," that she "had a "property right/interest in her job," and that she "was deprived of her employment without being afforded any due process." (*Id.* ¶¶ 21–24.)

The second cause of action alleges employment discrimination on the basis of religion in violation of 42 U.S.C. § 2000–e. This cause of action alleges that Patalonis "expressed a sentiment to a patient born out of her faith," and that she was summarily terminated as a result of this "innocuous expression/demonstrative action of faith." (*Id.* ¶¶ 27–28.) According to the

3

complaint, her termination "was motivated by nothing other than discrimination based upon plaintiff's religion." (*Id.* ¶ 29.)

The remaining three causes of action allege state-law claims. The third and fourth causes of action allege religious discrimination in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), respectively. The fifth cause of action alleges intentional infliction of emotional distress ("IIED"). The complaint seeks compensatory and punitive damages, along with attorneys' fees and costs, but does not seek reinstatement.

The Instant Motion

Outreach now moves to dismiss this action pursuant to Rule 12(b)(6). Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def. Memo") raises five points, the first two of which seek to dismiss Patalonis's two federal claims. Outreach's first point, which seeks to dismiss the Title VII claim raised in Patalonis's second cause of action, raises two arguments. First, Outreach argues that the Title VII claim is untimely because the complaint in this case was filed on March 6, 2019 – more than 90 days after Patalonis received the right-to-sue letter attached to the complaint. (Def. Memo (Doc. No. 16) at 3–5.) Second, Outreach argues that Patalonis fails to state a *prima facie* claim for religious discrimination because "she fails to allege how her religion was a substantial or motivating factor that contributed to her termination." (*Id.* at 5.)

In its second point, Outreach seeks to dismiss Patalonis's first cause of action for failure to state a claim. Outreach raises two arguments, both of which are unartfully phrased. First, asserting that Patalonis "cannot dispute that she was an at-will employee" and noting that the complaint does not "cite to any applicable law creating a property interest in her employment,"

4

Outreach argues that Patalonis cannot "demonstrate" the "protected property interest or liberty interest" necessary to "succeed on a due process claim under the Fourteenth Amendment." (Def. Memo at 6.) Second, Outreach argues that although the complaint alleges that Outreach is a "government contractor," Patalonis "has failed to demonstrate state involvement in the alleged actions by Outreach." (*Id.*)

The remaining three points relate to the state-law claims. In Point III, Outreach argues that Patalonis cannot bring claims under the NYCHRL because Brentwood is in Suffolk County, not New York City. Point IV urges the Court to decline to exercise supplemental jurisdiction over the state-law claims if it has already dismissed the causes of action over which it has original jurisdiction. Point V seeks to dismiss the IIED claims set forth in the fifth cause of action, alleging that termination of at-will employment cannot form the basis of an IIED claim and that the act of escorting her out of Outreach's office "as though she was a criminal" is not sufficiently "outrageous" as to give rise to an IIED cause of action.

In her Memorandum of Law in Opposition to the Motion to Dismiss ("Opp. Memo") (Doc. No. 18), Patalonis concedes that she does not have a claim under the NYCHRL and withdraws the fourth cause of action. (Opp. Memo (Doc. No. 18) at 7 n.1.) She also does not expressly contest the allegation that Patalonis was an at-will employee, or otherwise address the question of whether the complaint adequately alleges that she had a property interest in her job.

In contesting Outreach's other arguments, Patalonis twice relies on facts and allegations which are outside the four corners of her complaint. First, in contesting Outreach's argument that her Title VII claim is untimely, Patalonis submits an affirmation from her attorney, Kristina S. Heuser (the "Heuser Affirmation" (Doc. No. 19)). The Heuser Affirmation attaches three exhibits, two of which are relevant here. Exhibit A contains copy of a charge of discrimination

5

dated November 9, 2018, (Doc. No. 19-1 at 3), and a letter from Jiancheng Wang, an Investigator with the EEOC, to Patalonis acknowledging receipt of her charge of discrimination (Doc. No. 19-1 at 2).[3] Wang's letter, which is dated November 15, 2018, states that a copy of the charge will be sent to Outreach within ten days and that Patalonis does not need to take any further action.

Exhibit B to the Heuser Affirmation documents a December 14, 2018, email exchange between Patalonis and Wang, in which Patalonis requests "copies of my documents under Section 83," and Wang responds, "Please see attached." (Doc. No. 19-2 at 2). However, Wang's email does not describe the attachment and Exhibit B does not include the documents, if any, that were attached to Wang's email.

In her affirmation, Heuser asserts, "[u]pon information and belief," that "a right-to-sue letter was not enclosed" Wang's November 15, 2018, letter to Patalonis. (Heuser Aff. ¶ 5.) Heuser does not represent that she confirmed this fact with Patalonis, however. Rather, she reasons: "It defies logic that a right-to-sue letter would be issued immediately upon acknowledgement of receipt of the charge of discrimination by the EEOC, especially since in the correspondence it specifically tells the complainant (Plaintiff) not to take any action and that a copy of the charge will be sent to the Respondent … within ten days …." (*Id.*) Heuser concludes that the date on the right-to-sue letter is "erroneous," and that the right-to-sue letter was not actually issued until December 14, 2018. (*Id.* at ¶¶ 7–8.)

Patalonis also alludes to matters outside the pleading in contesting Outreach's "state involvement" argument. In the Opposition Memo, Patalonis represents that "[a]ll of [Outreach's] patients are referred by the Court." (Opp. Memo at 4.) Patalonis further states that

---

[3] Citations refer to page numbers assigned to these documents by the Court's Electronic Case Filing system.

6

the patients' "length of stay is dictated by the Court" and "the residents are not free to leave because of the mandate of the Court to remain there." (*Id.*) These allegations are contained only in Patalonis's memorandum of law; she does not provide any evidentiary support for these representations.

Along with its Memorandum of Law in Reply and Further Support of its Motion to Dismiss ("Reply Memo"), Outreach submits an Affirmation from one of its attorneys, Cara O'Sullivan (the "O'Sullivan Affirmation"). That affirmation attaches various exhibits, including a letter from O'Sullivan to Wang requesting disclosure of the EEOC's investigatory file relating to Patalonis's charge of discrimination, and Wang's response to that request. (O'Sullivan Affirmation, Ex. A (Doc. 21-1).) One of the documents obtained from Wang appears to be a handwritten note dated November 13, 2018, addressed to Wang and signed by Patalonis, which requests that a right-to-sue letter be issued. (*Id.* at 5.)[4] Another document is a typewritten letter to Patalonis from EEOC District Director Kevin J Berry, which advises Patalonis that the EEOC is granting her request and which purports to enclose a Notice of Right to Sue. (*Id.* at 6.) Notably, that letter is dated November 15, 2018 – the same date as the right-to-sue letter attached to Patalonis's complaint. (*Id.*)

## STANDARD OF REVIEW

Rule 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a complaint should be dismissed only if it does not contain sufficient allegations of fact to state claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). This "plausibility standard" is guided by two working principles. *Harris v. Mills*, 572 F.3d 66, 72 (2d

---

[4] Page numbers refer to the numbers assigned to the pages of Exhibit A by the Court's Electronic Case Filing system.

7

Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). First, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* Second, "'only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Ashcroft*, 556 U.S. at 679).

When considering a Rule 12(b)(6) motion, materials outside the pleadings are "generally not considered ... unless the court treats [the motion] as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03–CV–6233, 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). Aside from the allegations in the complaint, which are assumed to be true, a court can consider only "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). If matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and all parties must be given a reasonable opportunity to present material pertinent to the motion. Fed. R. Civ. P. 12(d).

## DISCUSSION

I. <u>The Title VII Claim</u>

In its motion to dismiss Patalonis's Title VII claim, Outreach raises two arguments: 1) that Patalonis's complaint fails to state a prima facie case for religious discrimination and 2) that

8

the Title VII claim is untimely because Patalonis did not commence this action within 90 days of her receipt of the right-to-sue letter. The Court will not address the first argument, since the second argument may mandate dismiss of the Title VII claim, regardless of whether the allegations in the complaint suffice to state a religious discrimination claim.

Outreach's second argument, however, cannot be resolved without considering facts that are not cognizable upon a Rule 12(b)(6) motion. In order to pursue a Title VII claim in federal court, a plaintiff must file his federal complaint within 90 days of receipt of the EEOC right-to-sue letter. *See* 42 U.S.C. § 2000e–5(f)(1). "Normally it is assumed that a mailed document is received three days after its mailing." *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996). "And normally it may be assumed, in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice." *Id.* at 526.

Outreach's second argument relies on these two presumptions. Outreach correctly notes that the right-to-sue letter attached to the complaint is dated November 15, 2018, and assumes that the letter was received on November 18, 2018. (Def. Memo at 4.) Since Patalonis waited 105 days before commencing this action on March 6, 2019, Outreach reasons that this action is untimely. (Def. Memo at 4–5.)

In response to this argument, Patalonis has introduced matters outside the pleadings. Specifically, she has submitted an affirmation from her attorney – the Heuser Affirmation – which attaches a copy of a charge of discrimination dated November 9, 2018; a letter from the EEOC dated November 15, 2018, acknowledging receipt of that charge of discrimination; and a December 14, 2018, email from Patalonis to EEOC Investigator Wang, requesting copies of "documents under Section 83." Based on these exhibits, Heuser asserts that the date on the right-

9

to-sue letter attached to the complaint was "erroneous," and that the right-to-sue letter was not actually issued until December 14, 2018. (Heuser Aff. ¶¶ 7–8.)

As part of its reply papers, Outreach has introduced evidence to controvert the assertions in the Heuser Affirmation. Notably, Outreach has submitted what appears to be a handwritten letter dated November 13, 2018, in which Patalonis requests that Wang issue a right-to-sue letter, and a letter from the EEOC to Patalonis dated November 15, 2018, which grants that request and encloses a Notice of Right to Sue. (O'Sullivan Aff., Ex. A.) Patalonis has not had the opportunity to adduce evidence in response to Outreach's evidence.

The question of when the EEOC issued the right-to-sue letter may well be dispositive of Patalonis's Title VII claim. "While the 90-day rule is not a jurisdictional predicate, 'in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day.'" *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (quoting *Rice v. New England College*, 676 F.2d 9, 11 (1st Cir. 1982)). Therefore, "[f]ailure to bring suit within the 90-day limitation period is fatal to the claim unless subject to equitable tolling." *Ko v. JP Morgan Chase Bank, N.A.*, 730 F. App'x 62, 63 (2d Cir. 2018) (summary order).

To resolve the question of whether the Title VII claim is timely, the Court must consider "matters outside the pleadings" which have been presented by the parties. Accordingly, the Court will convert this motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). While discovery is not complete in this case, Patalonis should not need discovery to address the issue of when she received the right-to-sue letter.

Ordinarily, the Court would simply order supplemental briefing, giving both parties a reasonable opportunity to present all the material that is pertinent to this issue. However, for

reasons explained below, the Court also requires further briefing with respect to the motion to dismiss the § 1983 claim.  To avoid confusion, the Court will deem the current motion to dismiss withdrawn and will set a schedule for re-briefing.

    II.    <u>The § 1983 Claim</u>

In order to maintain a § 1983 action, a plaintiff must allege two essential elements.  First, "the conduct complained of must have been committed by a person acting under color of state law."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted).  Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States."  *Id*.

The first step in analyzing a § 1983 claim is to identify the specific federal right allegedly infringed.  *See Albright v. Oliver*, 510 U.S. 266, 269 (1994).  In this case, Patalonis specifically alleges a violation of her Fourteenth Amendment right to due process.  However, while the complaint alleges that Patalonis had a "property right/interest in her job," (Compl. ¶ 23), it does not allege any facts in support of this allegation.  In addition, the complaint does not allege any facts to suggest that Outreach is acting under color of state law, but vaguely asserts that Outreach is a "government contractor."

Although Outreach arguments for dismissal of Patalonis's §1983 claim are somewhat unclear, the Court construes Defendant's Memo as arguing that the complaint 1) does not adequately allege a due process violation and 2) does not allege facts to suggest that Outreach is a state actor.  "To state a claim under the Due Process Clause, 'a plaintiff must show that she has a property interest, created by state law, in the employment or the benefit that was removed.'"  *McRae v. New York State Thruway Auth.*, 687 F. App'x 22, 23 (2d Cir. 2017) (summary order) (quoting *Bernheim v. Litt*, 79 F.3d 318, 322 (2d Cir. 1996)).  Although the complaint alleges that

Patalonis "had a property right/interest in her job," (Compl. ¶ 23), this allegation is conclusory and therefore does not suffice to allege a property interest.  *See Harris*, 572 F.3d at 72 ("legal conclusions" are not accepted as true for purposes of a Rule 12(b)(6) motion, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.)  Outreach argues that because Patalonis has failed to allege the deprivation of a cognizable property interest, the due process claim must be dismissed.  *See Singh v. Dist. Council 37*, 211 F. App'x 20, 21 (2d Cir. 2006) (summary order) (due process claim properly dismissed upon a motion to dismissed because plaintiff "failed to allege a deprivation of a cognizable property interest").

Outreach's second argument relies on the following well-established proposition:  "the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor."  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1931 (2019) (citing cases).  Outreach reasons that Patalonis's allegation that Outreach is a "government contractor," even if true, would not establish that Outreach is a "state actor."  However, a government contractor can be a state actor if "the private entity is performing a traditional, exclusive public function."  *Halleck*, 139 S. Ct. at 1931.  For example, "[n]umerous courts have held that privately run prisons are state actors for section 1983 purposes pursuant to the public function test."  *Byng v. Delta Recovery Servs., LLC*, No. 13-CV-733 (MAD) (ATB), 2013 WL 3897485, at *6 (N.D.N.Y. July 29, 2013), *aff'd*, 568 F. App'x 65 (2d Cir. 2014).  Similarly, at least some courts have held that privately run institutions which provide residential programs for inmates can qualify as state actors.  *See Braswell v. Cmty. Sols., Inc.*, No. 11-CV-1043 (JCH), 2013 WL 663621, at *3–4 (D. Conn. Feb. 4, 2013) (plaintiff plausibly alleged that residential work-release program to which the Connecticut Department of Corrections sent

12

inmates for "supervision and treatment and services" was a state actor) (citing *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 990 F.Supp. 498 (N.D.Tex. 1998) (holding that a private juvenile residential treatment center which had contracts with the state to provide daily care and supervision to juveniles sent to the center by the state and held on an involuntary basis was a state actor)).

    Patalonis has not adequately addressed either of these arguments. For reasons which are unclear, the Opposition Memo does not even address the first of these arguments. And Patalonis responds to the second argument only by alleging that "[a]ll of [Outreach's] patients are referred by the Court, the patients' "length of stay is dictated by the Court," and "the residents are not free to leave because of the mandate of the Court to remain there." (Opp. Memo at 4.) None of those allegations appear in the complaint.

    Since the Court is converting Outreach's motion to dismiss the Title VII claim into a motion for summary jdudgment, the Court will permit re-briefing with respect to the motion to dismiss the § 1983 claim as well. If Patalonis concludes that her complaint fails to state a § 1983 claim, she may move for permission to amend her pleading pursuant to Rule 15(a) of the Federal Rules of Procedure. Any such motion must include a copy of a proposed amended complaint. However, if Patalonis lacks a basis for alleging that she has a property interest in her job, or that Outreach is a state actor, she should withdraw her § 1983 claim.

    III.    <u>The State-Law Claims</u>

    A district court "may decline to exercise supplemental jurisdiction over a claim ... [if]... the district court has dismissed all claims over which it has original jurisdiction ..." 28 U.S.C. § 1367(c)(3). Although "[t]he exercise of supplemental jurisdiction is within the sound discretion of the district court," *Lundy v. Catholic Health Sys. of Long Isl. Inc.*, 711 F.3d 106,117 (2d Cir.

2013), the Second Circuit has repeatedly stated that "if a plaintiffs federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)).

For the reasons explained above, the Court cannot yet rule on Outreach's motion to dismiss Patalonis's two federal claims. Accordingly, the Court will defer decision on Outreach's fourth argument. The Court will also defer decision on Outreach's fifth argument, since the Court may not need to reach it if Patalonis's federal causes of action are dismissed and the Court declines to exercise supplemental jurisdiction. Both of these arguments may be repeated upon re-briefing. Outreach need not repeat its third argument since Patalonis has conceded that she does not have a claim under the NYCHRL and has withdrawn her fourth cause of action. (*See* Opp. Memo at 7 n.1.)

## CONCLUSION

For the reasons stated above, Outreach's motion to dismiss is deemed withdrawn and Outreach is directed to serve a new motion upon Patalonis within 30 days from the date of this Memorandum and Order. That motion shall request summary judgment on Title VII claim on the ground that this action was not commenced within 90 days of Patalonis's receipt of the EEOC's right-to-sue letter; shall move to dismiss the § 1983 claim on the ground that Patalonis has not alleged facts sufficient to state a Fourteenth Amendment due process claim; and may include motions to dismiss the third and fifth causes of action. Patalonis shall have 30 days from service of Outreach's motion in which to serve a response.

Patalonis may move for leave to amend her pleading in lieu of responding to Outreach's motion to dismiss her §1983 claim. In such event, she must include a proposed amended

14

complaint in her responsive papers and Outreach shall have 30 days from service of those papers in which to serve as response to that Rule 15(a) motion. Patalonis will have 15 days from service of that reply in which to serve a sur-reply, to file the fully briefed motion with the Court, and to mail courtesy copies of all motion papers to chambers. If Patalonis does not move for leave to amend her pleading, Outreach shall have 15 days from service of Patalonis's response in which to serve its reply, to file the fully briefed motion with the Court, and to mail courtesy copies of all motion papers to chambers.

SO ORDERED.

Dated: Brooklyn, New York
September 28, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge