```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
DEBORAH PATALONIS,

                    Plaintiff,

     -against-

OUTREACH DEVELOPMENT
CORPORATION,

                    Defendants.
--------------------------------------------------x
```

**MEMORANDUM AND ORDER**

Case No. 2:19-CV-01306-FB-SIL

*Appearances:*
| | |
|---|---|
| *For the Plaintiffs*: | *For the Defendants*: |
| KRISTINA SUSANNA HEUSER | CARA ANN O'SULLIVAN |
| Kristina S. Heuser, PC | Kaufman Borgeest & Ryan LLP |
| P.O. Box 672 | 120 Broadway |
| Locust, NY 11560 | 14th Floor |
| | New York, NY 10271 |

**BLOCK, Senior District Judge:**

Plaintiff Deborah Patalonis ("Patalonis") claims that Defendant Outreach Development Corporation ("Outreach") unlawfully discriminated against her by terminating her employment due to her religious beliefs. Outreach now moves to dismiss her complaint in its entirety under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and moves in the alternative for partial summary judgment under FRCP 56 as to her second claim. For the reasons discussed below, the motion to dismiss is granted as to count four and denied as to the remaining counts,

1

and the motion for partial summary judgment is denied. In addition, Patalonis cross-moves to amend her complaint. Her motion is granted and the amended complaint she filed as an attachment is treated as the operative complaint. *See* ECF 27-8.

## I.

The following facts are taken from the complaint. For present purposes, the Court accepts them as true and draws all reasonable inferences in favor of the plaintiff. *See*, *e.g.*, *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019).

Patalonis was employed by Outreach, a drug rehabilitation center in Brentwood, New York, as a registered nurse for 26 years. *See* Complaint at ¶ 1, 4. On July 11, 2018, Patalonis's employment with Outreach was terminated shortly after an interaction she had with a teenage patient. *See id*. at ¶ 1. During an intake interview with the patient, she told Patalonis that she was pregnant and scheduled to have an abortion that day, but that she did not want to go through with the procedure. *See id*. at ¶ 10. Patalonis alleges that she told the patient that "she should not proceed until she was certain and suggested that she pray about her decision to try to find clarity." *Id*. at ¶ 10-11. The exact conversation that occurred between the two is disputed by the parties, though for the purposes of this motion, Patalonis's factual allegations are taken as true.

Approximately one week after Patalonis's interaction with the patient, David Vizzini ("Vizzini"), the person in charge of Outreach, pulled Patalonis aside to ask her about the interview. *See id* at ¶ 12. Patalonis confirmed to Vizzini that she told the patient to pray. *See id*. at ¶ 13. Vizzini then asked Patalonis if she told the patient that "God would not forgive her if she had an abortion." *See id*. at ¶ 13. Patalonis denied and continues to deny saying this. *See id*. Shortly after this meeting, Outreach's Human Resources officer told Patalonis that her employment was terminated because she broke Outreach's code of conduct. *See id*. at ¶ 15-16. Patalonis claims that there is no language in the code of conduct prohibiting her from advising a patient to pray about her decision to have an abortion. *See* Compl. at ¶ 17.

Patalonis alleges that she was fired not for breaking Outreach's code of conduct, but due to her religious beliefs. As a result, she brings claims for: (i) deprivation of her Fourteenth Amendment right to due process, (ii) employment discrimination on the basis of religion, in violation of Title VII of the Civil Rights Act of 1964, (iii) discrimination on the basis of religion, in violation of the New York State Human Rights Law ("NYSHRL") and (iv) intentional infliction of emotional distress. Outreach challenges all causes of action.

## II.

Patalonis has moved for leave to amend her original complaint. She attaches a proposed amended complaint to her Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment and to Dismiss and in Support of Plaintiff's Cross-Motion for Leave to Amend the Complaint. ECF 27-8. Courts should freely give leave to amend a complaint when justice so requires. FRCP 15(a)(2). A request for leave to amend should be denied if amendment would be futile. *Port Dock & Stone Corp. V. Oldcastle Ne., Inc.,* 507 F. 3d 117, 127 (2d Cir. 2007) (holding that proposed amendment to a pleading that does not cure deficiencies in the pleading is futile, and therefore leave to amend should not be granted).

Patalonis wishes to amend her complaint to cure its deficiency in establishing that Outreach has a sufficient government connection to underpin a Fourteenth Amendment claim. She also withdraws one of the claims from the original complaint.[1] The Court finds that allowing Patalonis to amend her complaint is in the interest of justice and grants her motion. Accordingly, Patalonis's proposed amended complaint is treated as the operative complaint and the amended complaint is hereinafter referred to as the "complaint." *See* ECF 27-8.

---

[1] Patalonis withdraws her New York City Human Rights Law claim that was included in the original complaint, conceding that she does not have a claim under this law. ECF 18.

### III.

a.  Rule 12(b)(6)

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The pleading must offer more than "bare assertions," "conclusory" allegations, and a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

b.  Rule 56

"A district court may grant summary judgment only where 'the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.'" *Reynolds v. Quiros*, 990 F.3d 286, 293–94 (2d Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 248 (2d Cir. 2021) (internal citation omitted). At this stage, courts must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). "In evaluating a motion for summary judgment, a district court may not make credibility determinations, or weigh evidence." *Reynolds*, 990 F.3d at 294.

## IV.

The Court first addresses the 12(b)(6) motion to dismiss Patalonis's complaint in its entirety in order of the counts in Patalonis's complaint.

### a. Deprivation of Fourteenth Amendment Right to Due Process Pursuant to 42 U.S.C. § 1983

To establish a § 1983 due process claim, a plaintiff must show that: (1) a person acting under color of state law committed the conduct in question; and (2) the plaintiff was deprived of rights, privileges, or immunities secured by the

Constitution as a result of this conduct. 42 U.S.C. § 1983. For the purposes of a 12(b)(6) motion, Patalonis has met the pleading standard with her § 1983 claim.

Patalonis pleads that Outreach is a government contractor operating under color of state law. Compl. at ¶ 23. Defendant contends that, as pointed out in the Court's September 28, 2020 order, Patalonis has not alleged that Outreach was a state actor. *See* ECF 22. However, this deficiency was cured in Patalonis's amended complaint. Patalonis now provides factual matter, which we accept as true at this stage, alleging that Outreach works with the New York state justice system to divert criminal offenders. *Id*. at ¶ 24. Outreach accepts patients on both a mandatory and voluntary basis, maintains relationships with the New York State Courts, Probation and Parole offices and provides reports about patients to justice system officials. *Id*. For the purposes of this pleading, the Court is satisfied that Patalonis has shown that Outreach may be a state actor, allowing her § 1983 claim to proceed. *See Fabrikant v. French*, 691 F. 3d 193, 206-7 (2d Cir. 2012) (stating the three tests to determine if formally private conduct is so entwined with governmental policies or character that it may be deemed governmental action).

Defendant also argues that Patalonis had no property interest in her employment with Outreach and therefore has not pleaded a § 1983 claim. In doing so, Defendant primarily relies on an unpublished case in the Americans with Disabilities Act context. *See Hoehn v. Int'l Sec. Servs. & Investigations*, 97-CV-

7

0974A(F), 1999 U.S. Dist. LEXIS 22546, at *37 (W.D.N.Y. Mar. 4, 1999). It is true that a plaintiff may only bring a due process claim alleging a property interest in employment where he or she has "a legitimate claim of entitlement to it," and a property interest does not follow from every instance or type of employment. *Board of Regents of State Colls. V. Roth*, 408 U.S. 564, 577 (1972). However, whether there existed the circumstances of employment giving rise to a property interest is a factual determination too early to be made at this stage of pleading. Further discovery is needed to determine whether Patalonis had a property interest in her employment with Outreach. *See Bryant v. Steele*, 93 F. Supp. 3d 80, 94 (E.D.N.Y. 2015) (declining to find for defendant on a motion to dismiss when discovery may further shed light on viability of claims). Therefore, the 12(b)(6) motion is denied as to count one.

**b.  Employment Discrimination on the Basis of Religion Under Title VII**

To establish a claim for employment discrimination on the basis religion under Title VII of the Civil Rights Act of 1964, plaintiff must plausibly allege that: (1) her employer took adverse action against her and that (2) her religion was a substantial or motivating factor in the employer's decision to take the action. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F. 3d 72, 85-6 (2d Cir. 2015) (explaining the elements of a Title VII discrimination claim).

Patalonis pleaded in her complaint that Outreach, as her employer, terminated her employment based on her Christian faith, as evidenced by the firing occurring shortly after she advised a patient to pray. Parties do not dispute that Outreach, as Patalonis's employer, terminated her employment. *See* ECF 26-3 at 7. This satisfies the first element of Patalonis's Title VII claim. Defendant argues, however, that Patalonis was fired because she broke Outreach's code of conduct, not because of her religion. This is another question of fact that cannot be resolved at this stage. In the context of a Title VII claim, a "complaint need not contain specific facts establishing a prima facie case [...] but instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" (*Swierkiewicz v. Sorema N.A.* 534 U.S. 506, 506 (2002) (quoting FRCP 8(a)(2)). The complaint describes the events that transpired leading up to Patalonis's termination and demonstrates a connection between her religion and the adverse action that Outreach took sufficient to reach the liberal standard required to defeat a 12(b)(6) motion. Therefore, Defendant's motion is denied with regard to count two.

**c. Employment Discrimination on the Basis of Religion Under NYSHRL**

Patalonis's third count alleges religious discrimination by Outreach under the NYSHRL. *See* N.Y. Exec. Law §§ 290, et seq. The elements to state a claim under this New York state law are the same as those required under Title VII.

9

*See Mandell v. Cnty. Of Suffolk*, 316 F. 3d 368, 377 (2d Cir. 2000) (stating that the elements of a NYSHRL claim mirror those of a Title VII claim). Therefore, for the same reasons discussed above, the motion to dismiss with regard to count three is denied.

**d. Intentional Infliction of Emotional Distress**

Patalonis's final claim is for intentional infliction of emotional distress ("IIED"). In New York, "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Fischer v. Maloney*, 43 N.Y. 2d 553, 992-93 (N.Y. 1978). To satisfy an IIED claim, a plaintiff must show: (i) extreme and outrageous conduct, (ii) intent to cause severe emotional distress, (iii) a causal connection between the conduct and injury, and (iv) severe emotional distress. *Bender v. City of N.Y.*, 78 F. 3d 787, 790. New York state's threshold for extreme and outrageous conduct is high. The conduct must be so outrageous and so extreme "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society]." *Murphy v. American Home Products Corp.*, 58 N.Y. 2d 293, 303 (1983) (quoting Restatement of Torts, Second, § 46 cmt. d (1965)).

Patalonis has not pleaded anything rising to the level of extreme and outrageous conduct required to keep her IIED claim alive. Her complaint alleges

10

that she suffers from nightmares, worries, and crying spells, and that she suffers symptoms similar to those of Post-Traumatic Stress Disorder. Compl. at ¶ 34. However, the conduct that she alleges caused these symptoms was her employment termination and being "escorted out of the premises as though she was a criminal." *Id*. Termination of employment alone is not a valid basis for an IIED claim in New York. *Murphy, supra*, 58 N.Y. 2d at 304. Although the circumstances of termination may give rise to an IIED claim, no such circumstances are present here. Being escorted off the premises may be embarrassing, but it is a common practice in employment termination and clearly not so outrageous or extreme as to go beyond all possible bounds of decency. *See Murphy, supra*, 58 N.Y. 2d at 303. Patalonis also makes no mention in her complaint of Outreach's intent to cause her emotional distress. Accordingly, Patalonis fails to make a claim for IIED and Defendant's motion to dismiss is granted with regard to count four.

## V.

Although Defendant has moved to dismiss all claims under FRCP 12(b)(6), it also moves in the alternative for summary judgment under FRCP 56 as to Patalonis's second claim: employment discrimination on the basis of religion under Title VII of the Civil Rights act of 1964. 42 U.S.C. §§ 2000e-2. There is plainly a dispute of material fact regarding the date of mailing and receipt of the right-to-sue letter issued by the Equal Employment Opportunity Commission ("EEOC").

To file a Title VII action, plaintiffs must file suit within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. §§ 2000e-5(f)(1). Patalonis's right-to-sue letter is dated November 15, 2018. ECF 26-2 at Ex B. There is a rebuttable presumption that the letter was mailed on that same day that it is dated and that it was received by Patalonis three days later, on November 18, 2018. *See Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F. 3d 35, 37 (2d Cir. 2011) (holding that a government notice is presumed to be mailed on the date shown on its notice and received three days thereafter). Patalonis filed her complaint on March 6, 2019, which is 18 days after her 90 days had tolled. ECF 1.

However, Patalonis provides a sworn declaration in which she denies receiving the right-to-sue letter until on or after December 14, 2018, which would place her within the 90-day deadline to file suit. ECF 27-3 at 2. She also provides a sworn declaration corroborating the same from an attorney she consulted regarding her claim on December 13, 2018. ECF 27-4 at 2-3. The presumption that the letter was mailed on the date that it is dated can be overcome by "evidence from which it could be reasonably inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to [arrive]." *Tiberio* 664 F. 3d at 37. In addition, courts in this circuit have found that sworn affidavits disputing the date of receipt of a right-to-sue letter creates a dispute of material fact. *See, e.g.*, *Hilton v. Bedford Paving, LLC,* 769 F. Supp. 2d 92 (W.D.N.Y.

2010), *Greenidge v. Ben Hur Moving & Storage, Inc.*, No. 02-CV-1635 ERK 2002 WL 1796812 (E.D.N.Y. Aug. 6, 2002). The date of receipt of the right-to-sue letter is material, since it dictates the running of the clock with regard to the timeliness of Patalonis's claim. Therefore, there exists a genuine issue of material fact and accordingly the Court denies partial summary judgment on count two.

## CONCLUSION

For the foregoing reasons, the defendant's motion for partial summary judgment is **DENIED**. The defendant's motion to dismiss all counts is **DENIED** with regard to counts one through three and **GRANTED** with regard to count four. Patalonis's cross-motion for leave to amend her complaint is **GRANTED**.

**SO ORDERED.**

    /S/  Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 27, 2021